UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SYED AHMAD, et al, . Civil No. 16-cv-00463-ADS-AYS

Vs.

. 100 Federal Plaza
. Central Islip, NY 11722

7-ELEVEN,INC., et al,

. DATE: October 27, 2016

. . . . . . . . . . . . . . . .

FILED
CLERK
11/04/2016
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

TRANSCRIPT OF INITIAL CONFERENCE
BEFORE THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For The Plaintiff: Einbinder Dunn & Goniea
BY: MICHAEL EINBINDER, ESQ.
STEPHANIE BLUMSTEIN, ESQ.
112 Madison Avenue, 8th Floor
New York, NY 10016

For 7-Eleven: DLA Piper
BY: NORMAN MITCHELL LEON, ESQ.
LAUREN FRANCES GIZZI, ESQ.
1251 Avenue of the Americas
27th Floor
New York, NY 10020

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

---

**TRACY GRIBBEN TRANSCRIPTION, LLC**
859 Nutswamp Road
Red Bank, New Jersey 07701
**(732) 263-0044 Fax No. 732-865-7179**
**800 603-6212**
**www.tgribbentranscription.com**

THE CLERK: Calling 16-cv-463. Ahmad, et al versus 7-Eleven, Incorporated. Please state your appearances for the record.

MR. EINBINDER: My name is Michael Einbinder from Einbinder Dunn and Goniea, counsel for plaintiff.

MS. BLUMSTEIN: Stephanie Blumstein.

THE COURT: Good morning.

MR. LEON: Good morning, Your Honor, Norman Leon, DLA Piper, for 7-Eleven.

THE COURT: Good morning.

MS. GIZZI: And Lauren Gizzi, of DLA Piper.

THE COURT: Good morning. Everybody can be seated. Just make sure you speak into the mics and the lights are on, because it's all recorded. You don't need to stand up when you speak.

All right, so we're at the second amended complaint here, this is your initial conference in the declaratory judgment action. Right?

MR. EINBINDER: Yes.

THE COURT: And I know that you submitted a proposed discovery schedule, but I want to talk a little bit more about the case to figure out what discovery is appropriate here and how we can get the case moving along as quickly as possible.

So, I know that the plaintiffs are eight individual franchisees, is that right?

MR. EINBINDER: It's nine, Your Honor.

THE COURT: There are nine of them.

MR. EINBINDER: Yes.

THE COURT: Okay. Were they all parties to that class action that you refer to in the complaint?

MR. EINBINDER: No, Your Honor, no they weren't. They're all parties to the same type of franchise agreement.

THE COURT: They have the same franchise agreement?

MR. EINBINDER: On the issues in front of us, yes, Your Honor.

THE COURT: Okay. And all of them have been told they're being terminated. They're all 15 year agreements?

MR. EINBINDER: Yes.

THE COURT: Okay. And have they all been told they're being terminated prior to the 15 year term?

MR. EINBINDER: Yes, they will be notified of termination.

THE COURT: Okay, and I understand that you've agreed to keep everything in place pending the resolution?

MR. EINBINDER: Yes, Your Honor.

THE COURT: Okay. All right, so obviously then everybody wants to get it done as quickly as possible. Right?

MR. EINBINDER: Correct.

THE COURT: So is the case essentially a question of a breach of contract? What I'm getting at there is, is this

really just a documents case, Your Honor.

MR. EINBINDER: Not entirely, Your Honor.

THE COURT: Okay, tell me why not.

MR. EINBINDER: Well, if I had my way it would be just a document case, I think it clearly provides that my clients were entitled to a 15 year term provided the master lease, or the leasehold interest of 7-Eleven with respect to the store locations hasn't terminated or expired. In other words, if 7-Eleven doesn't lose the lease for the location, my clients are entitled to the full 15 years. We believe the contract provides for that.

We know there's a different opinion about that, and there are some terms in the agreement that are, in my opinion, at worst, ambiguous. And to the extent they're ambiguous, we believe some extrinsic evidence is required and we're talking about, and we had a conference earlier this week about it, the kind of discovery that we'd need to inform a determination of what the intent of the parties was, if the Court determines that there's an ambiguity in the agreement.

THE COURT: Okay. Let me hear --

MR. EINBINDER: That's one issue.

THE COURT: Okay, let me hear from defendants on that.

MR. LEON: Your Honor, the first thing I wanted to point out is that I don't think this is a termination case at

all. It's an expiration case. If you take a look at the term of the franchise agreement that sets forth the term of the parties' relationship, and there's only one, paragraph 9, it says in what I think are clear and unambiguous terms, that unless the agreement is sooner terminated for reasons set forth in paragraph 26 of the agreement, the agreement will expire on the earlier of 1) 15 years from the effective date, or 2) upon the expiration of the master lease. That's all it says. There's nothing unambiguous about that.

The master leases here have expired. 7-Eleven was able to retain the location and enter into new leases. But they're not the same lease that existed before. The master lease that was in effect when these franchisees got their franchises have expired.

THE COURT: So it is the same master lease for all of these different places?

MR. LEON: No.

THE COURT: I would imagine there are different leases.

MR. LEON: Each one is governed by a separate lease, Your Honor.

THE COURT: Okay.

MR. LEON: So, I don't think there's any ambiguity here at all. The provision that Mr. Einbinder is referring to when he talks about leasehold rights, is a provision in

paragraph 26 that addresses what happens if 7-Eleven loses a location period. If the location is condemned, if there's an eminent domain proceeding. If the location is damaged so much that it can't be reopened. In that event the franchisee has certain rights. They can transfer their franchise to another location, if there's another location available. Or alternatively, they can get a percentage of their franchise fee refunded.

But that's not what we're talking about here. They haven't lost these locations. They've kept them, but they're new lease agreements. And the reason for that is really quite simple. A lot of these locations have been leased to 7-Eleven for a really long time. Some of these original leases are more than 30 years old. All of the options that existed to renew were used up. And the landlords, perhaps not surprisingly, wanted a new lease with different economic terms.

Those terms, because of the way the franchise relationship is structured, impose an additional economic burden, because they refused to sign the renewal agreements, entirely on 7-Eleven. And I think that's important, Your Honor, just to briefly touch upon the economic structure of this relationship. Because it's a little different than the traditional franchise relationship.

7-Eleven doesn't get paid royalties off the top. It doesn't take a percentage of the franchisee's gross sales. The

relationship is structured so that there is a split of gross profit. Under the agreements that were in place prior to expiration, 7-Eleven would take 50 percent of the gross profits from the store, it's called a 7-Eleven charge under the agreement, and from that they would pay certain things, like utilities, taxes, property taxes, and most importantly rent.

Because these rents have gone up under these new leases, and because the franchisees have refused to sign the new agreements, which provide for a higher percentage going to 7-Eleven to account for this increased rent, the economics of the relationship have been inverted entirely.

THE COURT: Let me ask you this. Is the lease provision that you just referred to, which is when the master lease expires, two years after that you're entitled to the new lease. The other lease terminates, and there's a new lease.

MR. LEON: Right.

THE COURT: Is that affected by the settlement of the class action?

MR. LEON: No, it's not, Your Honor, for one simple reason. And we discussed this on Monday. I think we're largely in agreement. Mr. Einbinder can correct me if I'm incorrect. But under the best of circumstances, the settlement from the class action provided that the franchisees would get a minimum term of ten years under the franchise agreement. Each franchisee has already received the ten years.

THE COURT: Okay, so that doesn't even --

MR. LEON: That term has not impacted --

THE COURT: That doesn't even matter.

MR. LEON: Correct, Your Honor.

THE COURT: So how you're in between your ten and your 15.

MR. LEON: Correct, Your Honor.

THE COURT: And some of these are being terminated, as far as you say, under the terms of the agreement because the master leases have --

MR. LEON: Expired.

THE COURT: Expired.

MR. LEON: They're expiring pursuant to their terms, correct, Your Honor.

THE COURT: So is this a case where you'd move for summary judgment based upon those papers?

MR. LEON: We would, Your Honor, and it would be my hope that this would have been simply a document case. Frankly if we were able to put all of the leases in front of the Court, we didn't want to submit an answer that was several thousands pages long, I think it would have been a case that was likely amenable to resolution, either at the motion to dismiss or a motion for judgment on the pleading stage.

But we do want to get the leases in front of the Court. Because I think it is important, particularly because

they've raised an allegation that the renewal terms are unconscionable. That the Court see that this is not being done for nefarious reasons. The renewal terms are different than the original terms. And the franchise agreement said they would be different because the economics of the relationship have shifted.

THE COURT: So for your part, you would need in terms of documents to move for summary judgment, you need all the leases, you'd need showing that they've expired, right.

MR. LEON: Yes.

THE COURT: With the amounts in there. And any other agreements. And then I think you'd be ready to make a motion. If you lost that motion, then you know, if a District Judge said no, it's ambiguous, you need to take discovery. We need to show the intent of the parties. That's separate.

MR. LEON: I think it's separate, but to be quite honest, Your Honor, I think I do my client a disservice if I don't respond to the extent this comes out in discovery, to claims from the plaintiffs that they were told something about when the agreement would expire that we think is contrary to the plain terms.

THE COURT: So do you want factual discovery other than just getting the documents? Do you want to have full discovery before you make a motion? I mean, that's up to you. I'm trying to do what's quickest and most economical for the

parties here. And if it's a contract, and it's a matter of contract interpretation --

MR. LEON: Right.

THE COURT: If you feel strongly that you think that that's what it's about, then I'd say do all your documents and make your motion. If you don't believe that, it looks like the plaintiff wants discovery, defendant wants discovery, I want to tailor that discovery to what's necessary here. And you know, do you want to take eight depositions, I don't know what you want to do.

MR. LEON: I'd be happy to take a shot at a summary judgment motion, Your Honor. But I get one shot at a summary judgment motion.

THE COURT: Right.

MR. LEON: To the extent we're going to get into issues that the plaintiffs are going to raise claiming that this or that is ambiguous, I don't want to waive my right to address that at summary judgment --

THE COURT: Understood.

MR. LEON: -- if the Court happens to disagree with me, simply on the basis of the documents.

THE COURT: I understand. So what's the best way to do this. First of all in terms of what we're talking about is tier one discovery, these are all the documents that we're talking about here. And I think those are easy for everybody

to get their hands on. Even if you have it you still have to exchange it.

So let's talk about what those are so we have no ambiguity as to what we're exchanging as part of our first phase of discovery. So first of all, it's going to be for all of the plaintiffs, it will be all the leases right?

MR. LEON: Yes, Your Honor.

THE COURT: It will be all the leases. It will be, I would say the currently in effect franchise agreements, right? I think it will be the new leases that are being entered into by 7-Eleven. Any notices of termination, right, because we want to know, you're arguing they were terminated. Let's see how, let's see what happened. Agree?

MR. LEON: Well, it's --

THE COURT: How were they terminated?

MR. LEON: It's not a termination, Your Honor, it's an expiration of the term under the agreement. They all received letters, they have them and we're happy to produce them. If for some reason they can't find them. Just notifying them that this was happening.

THE COURT: So you notified them that the leases expired.

MR. LEON: Correct, Your Honor.

THE COURT: I'm sorry if I'm using the wrong term. It's not that you terminated, you're saying that the underlying

lease expired, therefore --

MR. LEON: Therefore the franchise agreement expired.

THE COURT: Exactly, it's expired.

MR. LEON: Correct.

THE COURT: So all of those underlying leases, I don't know if everybody has them. Do the plaintiffs have them?

MR. EINBINDER: No, we don't have the leases, Your Honor.

THE COURT: Okay, so certainly that's something that you need.

MR. EINBINDER: In addition -- well, we do. We need the new leases. We want to see the record, at least from 7-Eleven, of the negotiations with the landlord. Correspondence, communication about the new lease terms. About whether or not it would be a renewal as opposed to a new master lease. Because we believe that most of these just simply could have been renewed, which would have obviated this problem completely. As opposed to a new lease. I don't know that they're on different terms. I'm being told. But I'd like to see that. And the communication between the parties.

THE COURT: Okay. I think the defendant won't have a problem with any of that.

MR. LEON: I have no issue with that, Your Honor.

THE COURT: Okay, so you're going to need, on the defendant's side, all of the documents that support your claim

that these leases expired.

MR. LEON: Correct, Your Honor.

THE COURT: That's critical.

MR. LEON: Yes.

THE COURT: So putting it that way, if you were to fashion a document request, that's probably what it would say.

MR. EINBINDER: That's exactly, Your Honor I'm asking for leases, communication with the landlords, the notification with respect to termination of my client's franchise or expiration of my client's franchise agreements. And also in addition to that, Your Honor, we'd also ask for internal committee and/or executive communications at 7-Eleven concerning this step that they took. Because this was new. This is something that they hadn't done in the past. Previously lease, master leases were extended.

And we believe to a certain extent there may have been a determination made a high level in the company that it would be more beneficial for 7-Eleven to seek a new master lease as opposed to a renewal of an existing master lease, which has significant impact for my client. So we would ask for that kind of information as well.

MR. LEON: I'm not sure what that has to do with a breach of contract claim, Your Honor.

THE COURT: Yes. And I'm not saying I would deny that. I'm saying at this phase, we're talking about the first

stage --

MR. EINBINDER: Well, Your Honor, for summary judgment motion, I don't mean to interrupt, I'm sorry. If a summary judgment is going to be made after phase one, then we are, we would like to get that document --

THE COURT: It may or it may not. I'm not sure they're saying they will. What I'd like to do is have the parties look at what these documents are as phase one, right. Not going to make a motion yet, right?

MR. LEON: Right.

THE COURT: You're going to take a look at that. And then move on to depositions and further documents, okay? What we're talking about now are documents that everybody can quickly get their hands on. Right, these are leases, these are not going in through all the ESI and communications as to all these different sites. We're phasing this, right. So the first tier is just going to be these documents we talked about. I'm not saying you're not going to get those later. I'm saying now, for this stage, in terms of our schedule, that's what I want to define as within the first tier of documents exchange.

MR. EINBINDER: Your Honor, may I just on this issue. This last piece is something that I think is fairly discrete. You know, we've had a discussion about ESI and that it's not, there's not a main place where all of this is kept. There are probably people on a real estate committee that might have had

or a committee that might have had a discussion about this and the information would be, I hope readily available. If it's cumbersome and difficult to get, that may be another story, but it's a really discrete issue that we're asking for, is the determination that 7-Eleven made a couple of years ago, to start doing this process by which they demand, or get a new lease from their landlords and impose additional fees on the franchisees.

THE COURT: Is that argument based upon them having made a decision that, you know what, we'd rather not renew, we're going to enter into a new lease instead?

MR. EINBINDER: Right. Yes.

THE COURT: Okay, so that's something that may or may not be fleshed out as what happened in these initial documents. Let me ask defendants their position on that.

MR. LEON: Again, Your Honor, I don't want to get into a relevance dispute at this point. I understand they have the request. I'm not sure what intent has to do in a contract claim, because intent is irrelevant. But regardless, at this point because of the way that material and information is maintained at 7-Eleven, I'm not going to be able to do searches to pull information like that to the extent it is ultimately deemed relevant for purposes of this tier one discovery.

I can pull together everything that we talked about with relative ease. You know, the leases, old, new, documents

that have gone back and forth between 7-Eleven and the landlords, the franchise agreements themselves. But if we're going to start getting into things like this that are going to require searches, I'm simply not going to be able to do it within the time period.

THE COURT: Right. I get that. So I'm not saying it's relevant or irrelevant. I'm just saying it's not part of the first phase. Okay, that would be part of your requests that come later down the line. And you'll know it's coming.

MR. LEON: Yes.

THE COURT: Right. And if there's a summary judgment motion made before that kind of thing, that's a business decision that the defense lawyer is going to make, whether it makes sense to make that motion at that point or not. But it's up to you.

All I'm getting together here is what we're going to be exchanging as tier one discovery, and I think it's all on the record now. You've got the completion for the date of that as 12/21. You're comfortable with that?

MR. LEON: Yes, Your Honor.

THE COURT: That's plenty of time. All right, so let's do that. I don't think that there's going to be any new parties or amendment of the pleadings at this stage. So I don't even think we need that date. We're already at the second amended pleadings on that.

All right, I am not going to have you back in for a status conference after phase one, because I'm not sure that it's necessary in this case. I think you know where you're going in the case. If the defendants decide they want to make a motion for summary judgment, they're going to start that practice with Judge Spatt. So that's your call.

If you don't, you'll go forward with your request for documents by January 30th. And you'll make sure -- you've got a lot of depositions to take because you do have all of these different franchisees. To the extent you don't want to take them all, that's up to you. You know, if everyone is kind of saying the same thing and it's all the same legal argument, it's up to you.

I'm assuming 7-Eleven will have a 30(b)(6) person who will talk, who will have knowledge as to all of these, right?

MR. LEON: I would assume so.

THE COURT: So you may only have one deposition on your side where you may have nine on the plaintiff's side. In any case, these are the deadlines. And it is still a lot of depositions. So be aware that you're going to have to move pretty quickly to get the case moving. And I'm sure this is the kind of case that you want to move along quickly, because everybody is sort of at a hold, right?

MR. LEON: Correct.

THE COURT: Okay.

MR. EINBINDER: Your Honor, I just want to clarify a couple of things. One is that the end date for discovery we have here was put on the form when we got it. But it doesn't work with the dates that we set above the June 2nd date. So we need to tailor that to the July and August, that fact that some of our discovery is going to happen in July and August.

THE COURT: Wait, what are you looking at here? What do you want to do?

MR. EINBINDER: I'm looking at the completion of discovery date which is second from the bottom, it says June 2, 2017. That's the way that we received the --

THE COURT: Yes. And you've got your disposition motion after that. Is that what you're saying?

MR. EINBINDER: No. Your Honor, what we have is the completion of all discovery by June --

THE COURT: That is the smallest print I've ever seen in my life. Hold on.

MS. BLUMSTEIN: I apologize.

MR. EINBINDER: I wouldn't have been able to do this, so I'm not going to take responsibility.

THE COURT: It's like it's whispering. It's very respectful, by the way. It says we respectfully request that the completion dates be changed to August in accordance with the above -- okay, so, well usually you give people a little time in between the end of discovery and making the motion.

That's sort of why that is, so they can think about it. But if you both want --

MR. EINBINDER: We just, we have --

THE COURT: -- I'm okay with it.

MR. EINBINDER: Sorry?

THE COURT: You both want that?

MR. LEON: That's fine, Your Honor.

MR. EINBINDER: Okay.

THE COURT: I'm fine with it.

MR. EINBINDER: Good.

THE COURT: And if the defendant wants to make a motion before, they're certainly can do it, right?

MR. LEON: Yes.

MR. EINBINDER: Yes.

THE COURT: Okay. So I'm make that change right here.

MR. EINBINDER: Your Honor, I also want to clarify something because I know I mentioned it, I'm not sure in the list sort of enumeration --

THE COURT: Okay.

MR. EINBINDER: The documents that you thought were part of phase one, we also want documents concerning the settlement that resulted in the new franchise agreement in 2004.

THE COURT: Is that confidential?

MR. LEON: Your Honor, there's no reason to --

THE COURT: Well, first of all -- let me see --

MR. LEON: It's an irrelevant issue.

THE COURT: That gave people ten years. Right?

MR. EINBINDER: No, Your Honor. I didn't get a chance to address that issue.

THE COURT: Well, let's start at first with, how many of your plaintiffs were party to that class action?

MR. EINBINDER: All but one I'm told. But Your Honor --

THE COURT: All but one.

MR. EINBINDER: But Your Honor, but beyond that what it resulted in is an opportunity for franchisees to enter into an agreement in 2004 that would be more than -- at least ten years.

THE COURT: Do you just want the settlement agreement?

MR. EINBINDER: I want the settlement documents, I want the -- if I'm right and there's some ambiguity about this issue, which I think I'm entitled to be able to obtain information on.

THE COURT: Okay.

MR. EINBINDER: Then it's going -- then the ambiguity is, the analysis of the document is determined by what happened at the time it was signed, the intention of the parties. So if

there's an exchange of correspondence between attorneys -- I wasn't involved in 2004.

THE COURT: Okay, not correspondence, but at this point does the defendant have the class action settlement?

MR. LEON: I have the settlement right here, Your Honor.

THE COURT: Okay.

MR. LEON: I'm happy to give him the settlement.

THE COURT: So as part of first phase it will be just the settlement agreement. Anything underlying we'll leave that as down the road.

MR. EINBINDER: Your Honor, again what I'm looking for is documents that pertain to the issue of intent.

THE COURT: Right, so you're talking about lawyers talking to each other about the terms of the settlement of the class action in 2000 what?

MR. EINBINDER: Well, truthfully, Your Honor, this took place between lawyers. There was a class action lawsuit, a deal negotiated, an understanding that there would be an agreement in at least ten years and they chose 15, which is the one that came out of it. And the document that's in front of us, Your Honor. And so what they talked about in 2004, and the only people that really had conversations were the lawyers, will inform the intent of the parties to a certain extent.

THE COURT: To the intent of the parties as to what?

As to the class action settlement?

MR. EINBINDER: As to what I consider -- there's an ambiguity potentially, I think there's an ambiguity at worst concerning these provisions of the franchise agreement. Because there are provisions in the new franchise agreement, 2014, 4, franchise agreement that say it lasts until the master lease, until the leasehold is over. Counsel read one paragraph to you, there's other paragraphs in this document. I can read them. They're in our pleadings. But they say that the franchise agreement will go as long as the master -- as long as the leasehold interest exists, 15 years, or 15 years, whichever is shorter.

And what we're saying is, if there's an ambiguity, Your Honor, then the issue of the ambiguity, the determination of the intent of the parties is going to be based in part on the discussions that took place surrounding the settlement agreement which led to the 2004 franchise agreement. So, that information is relevant to this issue.

THE COURT: Okay, so at this point as far as phase one of discovery, I'm just going to ask the defendant to provide the settlement agreement in the class action lawsuit, to the plaintiffs, and nothing further at this point. To the extent that that's relevant later on, we'll deal with it then.

MR. EINBINDER: Okay, Your Honor.

THE COURT: Okay?

MR. LEON: Thank you.

THE COURT: Again, without prejudice to raising that later.

MR. EINBINDER: I understand, Your Honor.

THE COURT: But not as part of the first phase. All right, anything else anybody wants to bring up as part of the first phase of discovery or anything you need from me as of today?

MR. EINBINDER: No, Your Honor.

THE COURT: Defendant?

MR. LEON: Nor from us, Your Honor.

THE COURT: Okay. Thanks very much.

MR. LEON: Thank you, Your Honor.

* * * * *

**C E R T I F I C A T I O N**

I, **PATRICIA POOLE**, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/S/ PATRICIA POOLE

TRACY GRIBBEN TRANSCRIPTION, LLC DATE: November 4, 2016